# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3263
_____

Michael Tim Rinehart

*Plaintiff - Appellant*

v.

Kris Weitzell; Jeremy Larson; John Mays; Doug Bolton; Newton Correctional Facility

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 16, 2020
Filed: July 2, 2020
_____

Before KELLY, MELLOY, and KOBES, Circuit Judges.
_____

MELLOY, Circuit Judge.

Iowa inmate Michael Rinehart appeals the district court's sua sponte dismissal of his in forma pauperis complaint as failing to state a claim under the Americans with Disabilities Act (ADA). Because Rinehart adequately stated multiple claims, we reverse.

Rinehart is currently serving a prison sentence at the Newton Correctional Facility (the prison) in Newton, Iowa.  He has a diagnosis of diverticulitis, a chronic colon condition that causes diarrhea and constipation.  He is treated for the condition by medical staff at the prison, but he still suffers flare-ups of the disease that can be severe and make immediate access to a toilet a medical necessity.  For this reason, Rinehart resides in one of the prison's units with in-cell toilets.

The prison has a multi-level inmate privilege system through which good behavior is rewarded with access to certain privileges.  Since 2001, Rinehart had level-five status, the prison's then-highest privilege level.  In 2016, all prisoners with level-five status were required to move to Unit E.  Because Unit E does not provide a toilet in each cell, Rinehart was unable to move units.  Rinehart requested a medical exception, hoping he could stay in his current unit, which had in-cell toilets, while maintaining his access to level-five privileges.  A prison official denied his request and Rinehart lost access to his level-five privileges.[1]  The prison considered the denial of Rinehart's requests a "classification decision."  Pursuant to the prison's own policies, "classification decisions" are not reviewable through the prison's internal

---

[1]Those privileges included: extended visitor hours (nine hours per week, as opposed to four hours per week); yard time after the evening meal; ability to choose cell mate; ability to choose cell; ability to purchase certain canteen items; and access to late-night activities.  According to Rinehart, he has not enjoyed full access to these privileges since he lost them.  However, he was able to regain some visiting time, some yard time, and access to one canteen item after seven months without those privileges.

grievance procedure. On April 18, 2016, he filled an ADA grievance[2] related to his loss of level-five privileges.

In late 2017, the prison added an additional tier of privileges, level six. All prisoners enjoying level-six privileges were also required to live in Unit E. The prison offered Rinehart level-six privileges, but only if he agreed to live in Unit E, which still lacked in-cell toilets. Once again, Rinehart requested a medical exception that would allow him to stay in his current unit, with access to an in-cell toilet, and still enjoy the level-six privileges. His request for an exception was denied. Instead, prison officials John Mays and Jeremy Larson offered Rinehart a cell in Unit E that was near public toilets. Given the realities of his condition during a flare up, Rinehart rejected the offer.

In January 2018, a doctor at the prison issued a notice that Rinehart needed to be housed in a "room with a toilet available due to a medical issue." In early February 2018, Rinehart contacted Kris Weitzell, the prison warden, to seek assistance in securing a medical exception allowing him to access his level-six privileges. Weitzell responded: "We will discuss." No further discussion occurred. Later in February, Rinehart's wife contacted Doug Bolton, of the Iowa Department of Corrections, to discuss Rinehart's requests. Bolton responded by saying that Rinehart qualified for level-six privileges and that the prison was going to remove Rinehart's medical restriction so that he would no longer be classified as having

---

[2]The current ADA grievance was a supplement to an earlier grievance Rinehart had filed. Rinehart's earlier ADA grievance was based on a 2014 incident in which the prison and its officials denied Rinehart use of the bathroom in the prison's visiting room for purposes other than urination. Rinehart followed the prison's grievance procedures to attempt to gain full access to the bathroom. Receiving no remedy, he filed the earlier ADA grievance. That earlier grievance was not the basis for either of his claims in this action. The prison informally resolved the earlier grievance and allowed Rinehart full access to the visiting-room bathroom.

diverticulitis. This reclassification of Rinehart's medical needs occurred without a medical reexamination or diagnosis.

In August 2018, Rinehart filed a pro se complaint in the Southern District of Iowa against the prison and its officials named above. Rinehart alleged the prison and its officials violated the ADA by denying him access to the privileges for which he was otherwise eligible because of his diverticulitis. He further alleged the prison and its officials retaliated against him for filing ADA grievances by revoking his medical classification. On initial review under 28 U.S.C. §§ 1915A and 1915, the district court sua sponte dismissed Rinehart's complaint for failing to state a claim upon which relief may be granted. The court's order stated the dismissal counted as a strike for purposes of § 1915(g). Rinehart appealed and we appointed counsel.[3]

We review de novo the sua sponte dismissal for failure to state a claim under § 1915. Moore v. Sims, 200 F.3d 1170, 1171 (8th Cir. 2000) (per curiam). We also review de novo a district court's interpretation and application of § 1915(g). See Owens v. Isaac, 487 F.3d 561, 563 (8th Cir. 2007) (per curiam).

A district court shall dismiss an in forma pauperis complaint if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B). However, a pro se complaint, even "inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam), and can only be dismissed if the plaintiff fails to allege sufficient facts to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To determine whether a complaint states a facially plausible claim, we accept the factual allegations in the

---

[3]We express our appreciation to appointed Counsel for their zealous representation of Mr. Rinehart in this matter.

complaint as true and draw all reasonable inferences in the plaintiff's favor. Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

On appeal, Rinehart argues he stated two claims upon which relief could be granted. First, Rinehart argues he stated a Title II claim. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[4] 42 U.S.C. § 12132. In order to state a claim under Title II of the ADA, a plaintiff must allege

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010); see also Folkerts v. City of Waverly, 707 F.3d 975, 983 (8th Cir. 2013).

Rinehart's complaint sufficiently alleges he is a qualified individual with a disability. The ADA defines having a disability, in part, as suffering from "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). A "major life activity also includes the operation of a major bodily function," including "digestive" functions. Id. § 12102(2)(B). "Congress has instructed the courts to determine whether a limitation is substantial

---

[4]It is well established that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'" Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

in light of its command to interpret disability broadly." <u>Oehmke v. Medtronic, Inc.</u>, 844 F.3d 748, 756 (8th Cir. 2016). Whether a disability "substantially limits" an activity or function is a fact-specific inquiry. We may consider "the difficulty, effort, or time required to perform a major life activity . . . and/or they way an impairment affects the operation of a major bodily function." 29 C.F.R. § 1630.2(j)(4)(ii).

Rinehart's complaint alleges he suffers from a diagnosed case of chronic diverticulitis, which—when active—requires immediate and constant access to a toilet. Defendants argue this is not enough to allege a disability because even "if his condition is severe[,] it is rare" and does not rise to the level of a substantial impairment. However, the ADA requires that we view an "impairment that is episodic," like Rinehart's as "a disability if it would substantially limit a major life activity *when* active." 42 U.S.C. § 12102(4)(D) (emphasis added). Here, Rinehart has alleged that when his diverticulitis is active, he suffers through difficult and time-intensive digestive symptoms. This is sufficient to allege a disability under the ADA.

Rinehart also sufficiently alleges he was denied the benefit of the prison's privilege system by reason of his disability. He alleges the prison denied him access to level-five and level-six privileges.[5] These privileges fall into the category of benefits protected under Title II. <u>See</u> <u>Yeskey</u>, 524 U.S. at 210 ("Modern prisons provide inmates with many recreational activities, medical services, and educational and vocational programs, all of which at least theoretically benefit the prisoners (and any of which disabled prisoners could be excluded from participation in)." (internal quotations omitted)). Further, Rinehart alleges he twice requested a medical exception that would allow him to enjoy the privileges to which he was entitled while being housed in a unit with in-cell toilets. He alleges Defendants denied his requests

[5]Defendants frame this question as "whether [Rinehart's] cell placement is a benefit." However, reading the complaint in the light most favorable to Rinehart, it is clear the basis for his claim is the loss of access to privileges, not the exclusion from a certain cell.

and instead asked him to choose between retaining his privileges or having a bathroom in his cell. These allegations are sufficient on their own to state a claim. See Peebles v. Potter, 354 F.3d 761, 767 (8th Cir. 2004) ("The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if [the employer] was motivated by the disability."). To the extent Defendants raise arguments as to the merits of Rinehart's claims, they are misplaced. The case has not yet reached the stage for those arguments. At this point, the question before us is merely whether Rinehart has stated a claim, not whether Defendants can avoid liability through justification.

Next, Rinehart argues he stated a retaliation claim under Title V. Title V of the ADA prohibits retaliating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a claim under this provision, Rinehart needed to show that (1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity. See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007).

In support of this claim, Rinehart alleges Defendants retaliated against him for his filing of ADA grievances[6] by taking the adverse action of rescinding his medical classification without providing a medical reevaluation or rationale. In response, Defendants argue in a footnote of their brief that the "decision to place an offender in a cell that is required to meet their medical restrictions is not retaliation," and that because "there are established penological reasons" for certain decisions, "[a]ny retaliation claim is without merit." Defendants' arguments are not responsive to

---

[6]Filing an ADA grievance "is a protected activity under the ADA as long as [Rinehart] had a reasonable good faith belief in the allegations contained in the grievance." Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999).

Rinehart's allegations, nor are they appropriate at this stage of the litigation. Whether Rinehart's claim has merit beyond that required to survive initial review is a question for another day. For now, we conclude Rinehart states a plausible retaliation claim. See Twombly, 550 U.S. at 556.

Finally, Rinehart argues neither the dismissal of his complaint nor this appeal should be deemed a strike against him under the three-strikes rule of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g). "That rule generally prevents a prisoner from bringing suit *in forma pauperis* (IFP)—that is, without first paying the filing fee—if he has had three or more prior suits 'dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted.'" Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1723 (2020) (alterations in original) (quoting § 1915(g)). Because we conclude Rinehart's complaint sufficiently states claims upon which relief may be granted, we necessarily reverse the district court's assignment of a strike.[7]

For these reasons, we reverse the district court's sua sponte dismissal of Rinehart's complaint and remand for further proceedings.

———————————————

———————————

[7]In a supplemental letter filed under Federal Rule of Appellate Procedure 28(j), Rinehart argues for the first time that the district court may lack authority to enter § 1915(g) strikes at this juncture. See, e.g., Dooley v. Wetzel, 957 F.3d 366, 377 (3rd Cir. 2020) (holding that a district court "lacked the authority, at the time of dismissal, to declare that the dismissal constituted a 'strike' for purposes of § 1915(g)"); Snider v. Melindez, 199 F.3d 108, 115 (2d Cir. 1999) ("We also doubt whether the entry of a strike is properly considered at the time an action is dismissed. The designation of strikes has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained in forma pauperis pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes."). Because Rinehart did not raise this issue until his 28(j) letter, the issue is not properly before us. Valdez v. Mercy Hosp., 961 F.2d 1401, 1404 (8th Cir. 1992).