# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1732

_____

Arthur Carson

*Plaintiff - Appellant*

v.

Roger Lacy, doing business as D&B Janitorial Services; Laidlaw & Lacy Inc.;
First Advantage Background Services Corporation, (Originally named as
"Corporation Services Co."); D&B Janitorial Services; Anita Cotton

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: October 29, 2020
Filed: April 19, 2021
[Unpublished]

_____

Before COLLOTON, KELLY, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Arthur Carson appeals after the district court dismissed his pro se employment
discrimination action for failure to state a claim. Carson's complaint named, inter
alia, D&B Janitorial Services (D&B) and Anita Cotton, a D&B employee who

processed job applications.[1] He claimed that defendants discriminated against him, in violation of Title VII and the Arkansas Civil Rights Act (ACRA). Liberally construing his complaint, he alleged that, due to D&B's policy of not hiring, or limiting the hiring of, applicants with felony convictions, he was essentially disqualified from employment on the basis of his race, because statistical data indicated that, in Arkansas, the rate of incarceration among blacks was higher than among white individuals. The district court dismissed the case, concluding that Carson failed to state a claim under either Title VII or the ACRA. The court reasoned that Cotton could not be held individually liable under Title VII; that Carson's Title VII claim against D&B failed, because he did not allege D&B had disproportionately fewer black custodians as a result of using felony background checks; and that his ACRA claims failed under the same analysis applied to the Title VII claims.

Upon de novo review, we conclude that Carson's claims against Cotton were properly dismissed, because Cotton could not be held individually liable under Title VII or the ACRA. See Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam) (standard of review); see also Spencer v. Ripley Cnty. State Bank, 123 F.3d 690, 691-92 (8th Cir. 1997) (per curiam) (individual employees are not personally liable under Title VII); Calaway v. Practice Mgmt. Servs., 2010 WL 4524659, at *3 (Ark. Nov. 11, 2010) (unpublished) (explaining ACRA imposes liability only for discriminatory acts committed by employer).

We conclude, however, that Carson stated a Title VII claim against D&B because he plausibly alleged that D&B's policy of not hiring, or limiting the hiring of, applicants with certain felony convictions had a disparate impact on black

---

[1]Carson brought claims against other defendants, which were dismissed. Because his opening brief challenges only the dismissal of his claims against D&B and Cotton, we conclude that Carson has waived any issues related to the dismissal of his claims against other defendants. See Montin v. Moore, 846 F.3d 289, 295 (8th Cir. 2017) (claims not raised in opening brief are waived).

applicants, in that it excluded them from the opportunity of employment at a higher rate than white applicants. See Lewis v. City of Chicago, 560 U.S. 205, 213 (2010) ("[T]he essential ingredients of a disparate impact claim" under Title VII are that the "employer uses an employment practice that causes a disparate impact on one of the enumerated bases") (cleaned up) (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)); Connecticut v. Teal, 457 U.S. 440, 450 (1982) (explaining that, in considering Title VII disparate-impact claims, Supreme Court has focused on, inter alia, employment requirements that create discriminatory bar to opportunities; Title VII has never been read to require focus instead be placed on overall number of applicants in protected class actually hired); see also Chaidez v. Ford Motor Co., 937 F.3d 998, 1006-07 (7th Cir. 2019) (to plausibly state disparate-impact claim under Title VII, plaintiff must demonstrate defendant had established employment practice that caused disparate impact on basis of, inter alia, race; at pleading stage, basic allegations of statistical methods or comparisons suffice to support claim).

We further conclude that, to the extent Carson stated a Title VII claim against D&B, he also stated an ACRA claim as to D&B. See Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 792 (8th Cir. 2011) (ACRA discrimination claim properly analyzed under Title VII framework); cf. Ark. Code Ann. § 16-123-107(c)(1)(A) (employee who is injured by employment discrimination shall have civil action against employer).

Accordingly, we reverse the dismissal of Carson's Title VII and ACRA claims against D&B, we affirm the judgment in all other respects, and we remand the case to the district court for further proceedings.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

Plaintiff Arthur Carson alleged, among other claims, that D&B Janitorial Services violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Carson

challenged D&B's alleged policy of declining to hire convicted felons as custodians. He alleged that this hiring practice has an unlawful "disparate impact" on African-Americans. The district court dismissed the complaint on the ground that Carson failed to state a claim, and I would affirm the judgment.

Under Title VII, as relevant here, an unlawful disparate impact is established "only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race . . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). To meet his burden under this provision, Carson must show (1) an identifiable employment policy or practice, (2) a disparity in employment opportunities based on race, and (3) a causal connection between the first two. The district court dismissed Carson's disparate-impact claim on the ground that he did not adequately allege that D&B's hiring practice had a disparate impact on African-Americans who sought employment as custodians.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

The majority reverses the district court's ruling with one sentence of explanation, saying that Carson plausibly alleged that D&B's hiring practice "had a disparate impact on black applicants, in that it excluded them from the opportunity

of employment at a higher rate than white applicants." *Ante*, at 2-3. The opinion provides no further rationale, and the conclusion is incorrect.

The district court properly examined whether Carson plausibly alleged that D&B's asserted policy of excluding convicted felons from custodial positions resulted in a disparate impact on black applicants. In a disparate-impact case under Title VII, as with a disparate-impact case under the Fair Housing Act, courts must "examine with care whether a plaintiff has made out a prima facie case of disparate impact," as "prompt resolution of these cases is important." *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1111 (8th Cir. 2017) (quoting *Texas Dep't of Hous. and Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015)). The *prima facie* case for a disparate-impact claim is not merely an evidentiary standard; it embodies the essential elements of a claim under the statute. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728, 733 (7th Cir. 2014). "A plaintiff who fails to allege facts at the pleading stage . . . demonstrating a causal connection between a defendant's policy and a disparity cannot make out a prima facie case of disparate impact." *Ellis*, 860 F.3d at 1111 (brackets omitted) (quoting *Inclusive Communities*, 576 U.S. at 543).

Carson's complaint does not include sufficient factual content to support a reasonable inference that D&B is liable for unlawful discrimination. Carson alleges that a ban on employing convicted felons has a disparate impact on African-Americans who seek employment as custodians at D&B. In support, he cites statistics from 2007 showing that "the rate of incarceration" in Arkansas was greater for African-Americans than for Hispanics and whites. But rate of incarceration per racial group does not show the rate of felony convictions per racial group, for some incarcerated persons are not felons, and some felons are not incarcerated. The complaint also does not allege that the "rate of incarceration" accounts for varying lengths of incarceration for different felons: if felons of one race tend to be

incarcerated for longer terms than felons of another race, then the "rate of incarceration" would not reflect the rate of felony convictions for each race.

Nor does the complaint allege why the incarceration rate for the general population in Arkansas in 2007 is a sound proxy for felon status among the custodian applicant pool at D&B in 2020. The incarceration statistics are outdated by more than a decade. Even if the data were current, incarcerated persons presumably do not apply for custodial jobs at D&B, and the complaint includes no allegation about the numbers of non-incarcerated persons of each race in D&B's locality who have been convicted of a felony. And even if we were to assume that the "rate of incarceration" by race in 2007 reflects the number of felony convictions by race in the general population of non-incarcerated persons in 2020, a complaint may not "simply presume that population-level statistics will accurately describe subgroups of that population." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020). The complaint does not allege that the racial composition of D&B's applicant pool mirrors the racial composition of the general population.

For these reasons, Carson's complaint is insufficient to state a disparate-impact claim against D&B Janitorial Services under Title VII and the parallel provision of the Arkansas Civil Rights Act. I would affirm the judgment in its entirety.

_____